SCHWARTZ, Judge.
Immediately after the plaintiff had testified as the first witness on his own behalf, the trial judge dismissed his personal injury action with prejudice on the ground that the case involved a scheme to perpetrate a fraud on the defendants’ insurance company and on the court. We reverse.
The plaintiff was involved in an automobile accident, for which the defendants admitted liability, on Friday, July 30, 1976. According to his testimony at the abbreviated trial on damages only, he felt pain in his knee and back immediately after the accident. Although he told the investigating officer about the pain, he did not then go for treatment. Instead, he caught a ride home with a random passer-by who happened to give him the card of an attorney “if” he wanted to hire a lawyer. At home over the weekend the pain in his knee and back increased and his neck began to hurt and swell. On Monday, he contacted the lawyer whose card he had been given, was advised to secure medical care, and did so. He spent four days in the hospital. After-wards, he was treated on numerous occasions by a chiropractor, until he was discharged in December, 1976, because he wgs “feeling fine.” In the interim, he had sustained several hundred dollars in lost earnings and incurred hospital and medical bills, which were introduced into evidence,. of more than $1,000.00.[1]
At the trial in February, 1978, he stated that the medical treatment had been successful, and that he had no complaints in the injured areas and had had none since his discharge from the chiropractor. On cross-examination, however, he admitted *852 that on November 30,1977, he had sworn to and signed without reading, answers to interrogatories as prepared by his lawyer which stated that, at that time, he was still suffering from recurrent backaches which interfered with his work.[2] Attached to the answers was a final report of the chiropractor dated December 28, 1976, which assigned a 5% permanent partial disability based upon the presence of “bilateral residual muscle spasm” in the plaintiffs cervical spine.
While we indeed understand and sympathize with the concerns of the trial judge, we hold that this record does not support his action in denying, in effect, the plaintiff his right to have a jury pass upon the merits of his claim. As we said in Young v. Curgil, 358 So.2d 58, 59 (Fla. 3d DCA 1978):[3]
“The law is clear that a trial court has the inherent authority to dismiss actions based on fraud and collusion as well as to strike sham pleadings. Such a power is indispensible to the proper administration of justice because no litigant has a right to trifle with the courts. It is a power, however, which should be cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion or other similar wrongdoing . ” [emphasis supplied]
As in Young, the record may well give rise to an inference of fraud or collusion. But since the facts in Young, if anything, more strongly supported the conclusion that the plaintiff’s injuries were feigned than do those involved in this case, it is therefore all the more clear that, as stated at 358 So.2d 60:
“. . . The facts herein do not rise to the level of fraud or collusion as to require the court to dismiss the plaintiffs’ claims as an outrageous misuse of the system of justice.”
The defendants rely heavily upon Horjales v. Loeb, 291 So.2d 92 (Fla. 3d DCA 1974). That ease is not controlling. There, the plaintiff had admittedly changed prior sworn testimony specifically to permit him to recover against an insured defendant. In this case, the only “change” in testimony from the answers to interrogatories was a frank admission that the plaintiff had recovered, which acted to the benefit of the defendants. While the practice of signing answers to interrogatories under oath without reading them is scarcely to be approved, that action does not warrant the outright forfeiture of the plaintiff’s right to recover. See Parham v. Kohler, 134 So.2d 274 (Fla. 3d DCA 1961).[4]
In all but the most extreme cases, our system entrusts juries with the ultimate decisions as to whether claimed injuries are genuine or not. Our experience has demonstrated that juries deserve this trust and that they are well able to discern the truth and to render judgment accordingly. At the time that the court acted, there was no basis for declining to permit the jury to pass upon the issues in this case as well.[5] The final judgment below is therefore reversed and the cause remanded for trial.
Reversed and remanded.

. The action was filed under the no-fault law. proof of a permanent injury or $1,000.00 in reasonable medical expenses was therefore required for recovery.

. The answers also reflected a smaller claim for lost earnings than the amount to which he testified at trial.

. The trial judge in this case did not have the benefit of the Young decision, which was rendered after the trial below.

. The apparent use of a “runner” by the plaintiffs initial lawyer, and the preparation of answers to interrogatories by an attorney’s office without consultation with the party executing them are likewise to be condemned. Improprieties of counsel (or of physicians), however, should not act to deprive the party of his right to damages which he himself has sustained.

. This decision is not to be read as interfering in any way with the court’s rulings, at appropriate stages of the proceedings, on motions for directed verdict or for new trial.